UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M.R., | No.  1:25-cv-01517-JLT-EGC (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | (ECF No. 1) |
| Respondents. | [21-DAY OBJECTION DEADLINE] |

Petitioner M.M.R. is a noncitizen whom immigration authorities apprehended and released on November 7, 2022, but then re-detained on October 25, 2025.  On November 8, 2025, Petitioner filed the instant habeas petition along with a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On November 24, 2025, the Court converted the motion for TRO into a motion for preliminary injunction and granted said motion in part. (ECF No. 18.) Per the Court's order, Respondents were directed to provide Petitioner a substantive bond hearing no later than December 5, 2025, at which the Immigration Judge was to determine whether Petitioner posed a risk of flight or danger to the community if released. (ECF No. 18 at 22.) The parties were advised that they could submit further briefing. The matter was referred to the undersigned for further proceedings, including preparation of findings and recommendations on the petition or other appropriate action.

On December 22, 2025, Respondents filed an opposition to the petition. (Doc. 20.) In their opposition, Respondents addressed the merits of the petition but also requested a stay of

proceedings pending the outcome of the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). (ECF No. 20 at 8.) On January 20, 2026, Petitioner filed a reply to the opposition. (ECF No. 21.) On April 17, 2026, the Court denied the motion for stay and referred the matter to the undersigned for preparation of findings and recommendations on the merits of the petition. (ECF No. 28.)

I.    FACTUAL BACKGROUND

For judicial efficiency, the Court restates the background set forth in the order granting preliminary injunction:

Petitioner is a citizen and national of Peru who entered the United States on or about November 7, 2022, at which time she and her two granddaughters were apprehended by the Department of Homeland Security near Calexico, California. (Doc. 1-2, ¶9-10; Doc. 11-1 ¶6.) Petitioner admitted to entering the United States unlawfully. (Doc. 11-1 at 6.) That same day, Petitioner was released on an Order of Recognizance "due to a lack of bed space" (*Id*. at 6, 10) and served with an I-220A Notice of Appear (Doc. 1-3; Doc. 11-1 at 12)) pursuant to INA 212(a)(6)(A)(i) (8 U.S.C. §1182(a)(6)(A)(i)) as a noncitizen not admitted or paroled in the United States. In doing so, immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). The I-220A form Petitioner signed upon her release imposed various conditions, including reporting to a duty officer in Stockton, California on November 22, 2022. (Doc. 11-1 at 10.)

Later, DHS enrolled Petitioner into the Intensive Supervision Alternative Program ("ISAP") (Doc. 11-1, ¶8.) Petitioner contends that she attended all court hearings and complied with all ISAP reporting requirements, including wearing an ankle monitor for a month. (Doc 1-2, ¶12.) At some point, Petitioner was instructed to complete periodic photo check-ins as part of her reporting requirements, and sent a completed a photo check-in just days prior to her arrest. (*Id*. at ¶13.) Respondents describe Petitioner's ISAP compliance differently, asserting that she missed required self-report check-ins on October 22, 2024, January 14, 2025, February 11, 2025, March 13, 2025, and July 29, 2025. (Doc 11-1, ¶9.) Respondents also report that Petitioner was previously reminded to comply with the conditions of release but continued to violate ISAP reporting requirements. (Doc. 11-1 at 7.)

According to information relayed to the Court from Petitioner through counsel, she came to live in Tracy, California after entering United States, where she lives with her three adult children and her granddaughters. (Doc. 1-2, ¶11.) She has kept a clean criminal record and supports her family through childcare and household chores. (*Id*.) Petitioner timely filed a Form I-589 (Application for Asylum and Withholding of Removal) and has a master hearing calendared in 2027 prior to her detention. (*Id*., ¶20.) She now has a scheduled hearing date of November 19, 2025. (*Id*.)

2

On or about October 25, 2025, Petitioner reported to the Immigration and Customs Enforcement Field Office in Stockton for a scheduled office visit, where she was arrested for violating the conditions of the ISAP program. (Doc. 1-2, ¶15; Doc 11-1, ¶10). Later that evening, Petitioner was transferred from Stockton to the California City Correctional Facility. (Doc. 1-2, ¶18.)

On November 8, 2025, Petitioner filed a petition for writ of habeas corpus (Doc. 1) asserting that her detention is unlawful under the Immigration Nationality Act and violates her procedural and substantive due process rights under the Fifth Amendment. (Doc. 2.) She also filed a motion for a temporary restraining order requesting immediate release and other injunctive relief (Id) and a motion to proceed via pseudonym (Doc. 3.) At the time of filing, Petitioner's next scheduled immigration hearing was set for November 19, 2025. (Doc. 1-2 at ¶20.)

The government opposes the issuance of preliminary injunctive relief and maintains that Petitioner's detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(2). (*See generally* Doc. 11.) In support of their arguments, Respondents offer the Declaration of Deportation Officer Chavez, who details how Petitioner "did not comply with her ISAP reporting requirements and missed her check-ins on numerous occasions, including October 22, 2024, January 14, 2025, February 11, 2025, March 13, 2025, and July 19, 2025. (Doc 11-1; ¶20.) Respondents attached an I-213 Form (Doc. 11-1 at 7), which listed Petitioner's ISAP violation and the types of violations that occurred on each of the asserted violation dates, but did not include any backup documentation regarding the ISAP violations or other evidence of warnings given to Petitioner. Due to the ambiguity in the declaration, the Court required Respondents to file the underlying documents upon which the declaration relied. The order reads:

> Respondents have presented the declaration of a Deportation Officer attesting that Petitioner incurred numerous ISAP violations and generally describing the nature of those violations. (Doc. 11 -1.) However, to evaluate any appropriate relief in this case, the Court requires additional detail from Respondents. Thus, on or before noon on November 18, 2025, Respondents are directed to supplement the record with backup documentation demonstrating the type(s) of violation(s) that occurred on each of the asserted violation dates. (Doc. 12.)

On November 18, 2025, Respondents provided an additional declaration from DO Juarez (Doc. 14) and ISAP records documenting Petitioner's various violations. (Doc. 14-1 at 1.) Even still, Respondents did not provide any evidence of contemporaneous notices or warning letters of the relevant violations. Petitioner argues in her reply (Doc. 13) that she "does not recall failing to complete some of her SmartLINK phone photo surveillance check-ins. To the best of her ability and recollection, she has properly checked-in each time." (Doc. 13 at 4.) Petitioner also stated that she "struggles with digital literacy and has relied on her family for support during her check-ins." (*Id.*)

(ECF No. 18 at 2-4.)

## II.   JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

III.     DISCUSSION

Petitioner raises two claims in her petition: the first alleges a violation of procedural due process and the second alleges a violation of substantive due process. (ECF No. 1 at 24-26.) Both causes of action invoke the Fifth Amendment to the U.S. Constitution.

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id*. (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

    A.  Procedural Due Process

       *1.  Legal Standard*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

  *2. Analysis*

The parties disagree on the statutory basis for Petitioner's detention.  Petitioner contends that her detention is governed by 8 U.S.C. § 1226(a), whereas Respondents contend that Petitioner's re-detention is mandatory under section 1225(b).

In the order granting a preliminary injunction, the Court did not accept the Government's position that § 1225(b) applied in this case. Given the Government stands solely on its arguments already considered by the Court in its order granting in part Petitioner's motion for a preliminary injunction, and for the same reasons the Court found that Petitioner is likely to succeed on the merits of her procedural due process claims, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus as to her procedural due process claim. As set forth in its order, the Court reasoned that because Petitioner was present in the United States for approximately two years and was released on her own recognizance by ICE before Respondents adopted a new interpretation of the governing statutes, §§ 1225(b)(2) & 1226, the Government's new interpretation does not apply here, and Petitioner's detention is not "mandatory" in this action. (ECF No. 18 at 12-14). That reasoning applies with equal effect in consideration of the

merits of the petition.

As to Petitioner's arguments that her continued detention violates her due process rights, the Court reasoned that Respondents failed to contend with the liberty interest created when Petitioner was released on her own recognizance before the government adopted its recent interpretation of the governing statutes. (ECF No. 18 at 12-14; *see Pinchi v. Noem*, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("…even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody[,] she has a protected liberty interest in remaining out of custody[.]") (citations and boldface omitted); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

The Court then applied the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) and found that Petitioner has a substantial private interest in being out of custody. As to the first factor, the Court reasoned that during her approximately two years on parole, Petitioner pursued gainful employment, built relationships with many in her community, and kept a clean criminal record. (ECF No. 18 at 16.) In their opposition to the petition, Respondents acknowledge that "a noncitizen's private interest in 'freedom from prolonged detention' is 'unquestionably substantial'"; however, Respondents argue that prolonged mandatory detention pending removal proceedings has been repeatedly upheld by the Supreme Court. (ECF No. 20 at 23 (citing *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).) Nevertheless, Respondents fail to contend with the liberty interest created when Respondents released Petitioner and allowed her to reside in the country for two years.

As to the second factor, the Court found there was at least some risk of erroneous deprivation of her liberty interest. Petitioner had been released on parole after DHS concluded she was not a flight risk or danger to the community. In addition, Respondents maintain their position

that Petitioner is subject to mandatory detention and therefore not entitled to any review of her detention. (ECF Nos. 18 at 16-17; 20 at 24.) These two circumstances exacerbate the risk of erroneous deprivation.

In consideration of the last *Mathews* factor, Respondents note that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" (ECF No. 20 at 24 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 518).) Nevertheless, the Court concluded that the government's interest in detaining Petitioner without proper process was slight. (ECF No. 18 at 18.)

Therefore, under *Mathews*, because Petitioner has shown the procedures or lack thereof as applied to Petitioner are not sufficient to protect her liberty interest, the Court concluded that Petitioner had demonstrated a likelihood of success on the merits of her procedural due process claim. (ECF No. 18 at 18.)

Because the government does not raise any new argument in response to the Court's findings on Petitioner's procedural due process claim and, thus, does not rebut that the merits of Petitioner's procedural due process claim, the undersigned will recommend that the Court grant Petitioner's petition as to her procedural due process claim.

B. Substantive Due Process

1. *Legal Standard*

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746 (citations omitted).

In the criminal context, the Ninth Circuit has held that "[a] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*, 481 U.S. at 747). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention."

7

*Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (internal citation omitted), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

### 2. Analysis

Petitioner's substantive due process claim largely mirrors her procedural due process claim addressed above. Specifically, she alleges that the Due Process Clause of the Fifth Amendment forbids the government from depriving her of her right to be free from unjustified deprivations of liberty. (ECF No. 1 at 25-26.) Similarly, in her moving papers in support of the motion for preliminary injunction, Petitioner argues that "immigration detention, which is 'civil, not criminal,' and 'nonpunitive in purpose and effect,' must be justified by either (1) dangerousness or (2) flight risk." (ECF No. 2 at 12.) In opposing the motion for preliminary injunction, Respondents did not directly address the substantive due process claim aside from arguing generally that Petitioner is an applicant for admission subject to mandatory detention. (ECF No. 11.)

As the Court found in its order granting Petitioner's motion for preliminary injunction, Respondents rely on an incorrect interpretation of § 1225 for the authority to detain Petitioner. (ECF No. 18 at 13-14). The Court noted the various legal arguments relied upon by the government to support the assertion that Petitioner's detention is "mandatory" under § 1225(b) while her removal proceedings are pending have been rejected by this Court in other proceedings. *Id*. (*citing, e.g., Ortiz Donis v. Chestnut*, 1:25-cv-01228-JLT, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025)).

Notwithstanding the undersigned's finding above that Petitioner's procedural due process rights were violated, the undersigned finds Petitioner fails to establish that her detention served "no regulatory purpose that can rationally be assigned to the detention" or that her detention was "excessive in relation to its regulatory purpose" such that the Court may conclude the detention was punitive. *Torres*, 995 F.3d at 708 (citing *Salerno*, 481 U.S. at 747). Petitioner does not allege in her petition that her detention was motivated by any intent of Respondents to punish her. Rather, she pleads that her continued detention is punitive in nature given that she attended all of her court hearings and appointments, undermining any inference that her detention is permissible

8

due to flight and/or danger considerations. (ECF No. 1 at 26.)

Following the decision of a District Court Judge in the Northern District of California, other courts, including at least one Judge of this Court, have applied a multi-factor test[1] when considering a habeas claim of substantive due process violation brought by an immigration detainee. *Doe v. Chestnut*, 810 F.Supp.3d 1169, 1179, No. 1:24-cv-00943-EPG-HC (E.D. Cal. Nov. 20, 2025) (citing *Doe v. Becerra*, 732 F. Supp. 3d 1071 (N.D. Cal. 2024)); *see also Guillermo M.R. v. Albarran, et al.*, No. 25-CV-05436-RFL, 2026 WL 1256874, at *3 (N.D. Cal. May 7, 2026). Because Petitioner here does not cite *Doe v. Becerra* and does not argue that the Court should consider the multi-factor test defined in that nonprecedential opinion, the undersigned does not undertake an analysis pursuant to *Doe* except to note that several of the factors would seem to weigh in favor of finding no substantive due process violation. Specifically, the length of Petitioner's detention was relatively brief before Petitioner's hearing, and there is at least some evidence (specifically, evidence of noncompliance with release conditions) supporting the notion that Respondents' detention of Petitioner was motivated by an apparent risk of flight.  As previously stated, Respondents cited multiple violations of Petitioner's reporting requirements. (ECF No. 11-1 at 7.)

Accordingly, the undersigned will recommend that the Court deny Petitioner's petition as to her substantive due process claim.

///

///

---

[1] In *Doe v. Becerra*, the court employed a five-factor balancing test to determine whether immigration detention violates due process. Those factors include:
(1) the length of detention and whether it is excessive in relation to its regulatory purpose;
(2) the government's contribution to any delay;
(3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
(4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
(5) the conditions of detention and how they compare to conductions under which pretrial criminal detainees or people convicted of crimes are held.
723 F.Supp.3d at 692.

IV.     CONCLUSION & RECOMMENDATION

The Court therefore concludes that Respondents are violating Petitioner's due process rights by detaining her purportedly under § 1225(b)(2). The Court finds that Petitioner is detained pursuant to § 1226(a), and as such, she is entitled to a bond hearing before a neutral arbiter wherein the Government must establish that Petitioner is a flight risk or danger to the community such that her physical custody is legally justified. For the foregoing reasons, the Court hereby RECOMMENDS that the petition be GRANTED.  Since the District Court has previously ordered a bond hearing be provided to Petitioner, the Court does not recommend any further relief.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **May 13, 2026**                    _____

UNITED STATES MAGISTRATE JUDGE

10